UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| MALIBU MEDIA, LLC., | ) |
| | ) |
| Plaintiff, | ) Civil Case No. 1:12-cv-01188-JES-JAG |
| | ) |
| v. | ) |
| | ) |
| JOHN DOES 1-34, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT
JOHN DOE #6'S MOTION TO QUASH SUBPOENA [DKT. #7]**

**I.    INTRODUCTION**

Plaintiff respectfully requests the Court deny Defendant's Motion because joinder is proper, Defendant has not provided a valid reason to quash the subpoena. "While we would like to think that everyone obeys the law simply because it is the law and out of a sense of obligation, we also know that laws without penalties may be widely ignored."[1] Plaintiff has suffered great harm due to infringements committed by thousands of residents in this District and has no option but to file these suits to prevent the further widespread theft of its copyright.

Several courts in the Seventh Circuit have issued opinions holding joinder is proper at this stage of the litigation. See First Time Videos, LLC v. Does 1-76, 276 F.R.D. 254, 257 (N.D. Ill. 2011) ("At this stage, joinder is appropriate."); First Time Videos, LLC v. Does 1-500, 276 F.R.D. 241, 252 (N.D. Ill. 2011) ("An examination of each of these requirements shows that joinder is proper at this time."); MGCIP v. Does 1-316, 10 C 6677, 2011 WL 2292958 (N.D. Ill. June 9, 2011) ("The Court also finds that the putative defendants's arguments that they were

---

[1] Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks Statement of Marybeth Peters The Register of Copyrights before the Committee on the Judiciary 108th Cong. (2003) available at http://www.copyright.gov/docs/regstat090903.html

improperly joined are premature."); Hard Drive Productions, Inc. v. Does 1-55, 11 C 2798, 2011 WL 4889094 (N.D. Ill. Oct. 12, 2011) ("At this pleading stage, Hard Drive's allegation that Does 1–55 have infringed Hard Drive's copyright through BitTorrent—the nature of which necessitates a concerted action by many people in order to disseminate files—is sufficient to satisfy Rule 20(a)."); Pac. Century Int'l v. Does 1-31, 11 C 9064, 2012 WL 2129003 (N.D. Ill. June 12, 2012) ("at least at this stage, Plaintiff's allegations that the anonymous defendants participated in the same "swarm" (at varying times spanning just over one month) sufficiently alleges that they were involved in "a series of transactions" to warrant joinder under Rule 20."); Sunlust Pictures, LLC v. Does 1-75, 12 C 1546, 2012 WL 3717768 (N.D. Ill. Aug. 27, 2012) ("joinder is appropriate in this case because Sunlust has alleged sufficient facts to provide a basis for joinder of all of the defendants.".)

Both the Eighth and Second Circuits, the only circuits to rule on the issue, have approved the use of Rule 45 subpoenas in on-line infringement cases to identify anonymous Doe Defendants.  The Eight Circuit held "organizations such as the RIAA can file a John Doe suit, along with a motion for third-party discovery of the identity of the otherwise anonymous 'John Doe' defendant."  In re Charter Communications, Inc., Subpoena Enforcement Matter, 393 F.3d 771, FN3 (8th Cir. 2005).  Similarly, in Arista Records, LLC. v. Doe 3, 604 F.3d 110 (2d Cir. 2010) the Second Circuit upheld the District Court's denial of a motion to quash after Arista obtained leave "to serve a subpoena on defendants' common ISP, the State University of New York at Albany."  By so holding, the Second Circuit approved the process of issuing a Rule 45 subpoena to an ISP to identify anonymous Doe Defendants.  Doe 3 in the Arista case unsuccessfully argued he or she had a First Amendment right to remain anonymous which outweighed a Plaintiff's right under the Petition Clause of the U.S. Constitution to sue for

copyright infringement.  Additionally, the Second Circuit rejected Doe 3's assertion that the Supreme Court's heighted pleading standards as announced in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) and <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1337 (2009) made it impossible to plead a claim of infringement against an on-line anonymous infringer.

> [T]he Court finds that (a) the information sought in the subpoenas is relevant to the plaintiff's claims; and (b) under the circumstances, the plaintiff's right to pursue its claims of infringement by means of discovering subscriber information outweighs the moving defendant's asserted rights to remain anonymous in connection with the alleged infringing activity.

<u>Id.</u> at 5.

At this stage of the litigation process, Plaintiff has no other option but to file suit against the owners of these IP addresses to obtain the infringers identity.  If this Court were to follow Defendant's rationale, Plaintiff would have no recourse against the mass copyright infringement it suffers on a daily basis.

## II.     **JOINDER IS PROPER**

Fed. R. Civ. P. 20 permits joinder when plaintiffs **"**assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all plaintiffs will arise in the action." Rule 20(a) not only permits permissive joinder when there is the same transaction or occurrence, it also permits joinder when a Plaintiff has pled (a) "series of transactions or occurrences" or (b) joint or several liability.   Plaintiff has done both here and respectfully requests this Court to rule in line with the majority of decisions in the Northern District that have found joinder appropriate in copyright infringement BitTorrent actions.

A.      **The Infringement Occurred Through a Series of Transactions**

For the word "series" to have any meaning in Rule 20(a), the rule must permit joinder to be proper when there is something other than a direct transaction. "Series" has been interpreted by Circuit Courts to mean a "logically related" fact pattern.

> [A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.

Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974).

While the logical relationship test does not require it, should this matter go to trial, Plaintiff will prove that the Defendants' infringement was committed through the same transaction or through a series of transactions with mathematical certainty by demonstrating, *inter alia,* that the algorithm used by BitTorrent Trackers would have caused the entire series of transactions to be different <u>but</u> <u>for</u> each of the Defendants' infringements.

Recently, Judge Randon in the Eastern District of Michigan properly analyzed the facts in a near identical case, expending substantial effort to understand the allegations in the complaint and the applicable law. Judge Randon summarized the plaintiff's allegation asserting that each Defendant copied the same piece of the same file as follows:

> Plaintiff alleges that its investigator ("IPP") was able to download at least one piece of the copyrighted Movie from each Defendant (Dkt. No. 1 at 8–10). It is important to understand the implications of this allegation before determining whether joinder is proper. If IPP downloaded a piece of Plaintiff's copyrighted Movie from each Defendant (and, conversely, each Defendant uploaded at least one piece of the Movie to IPP) then each Defendant had at least one piece of the Movie—traceable via Hash Identifier to the same Initial Seeder—on his or her computer and allowed other peers to download pieces of the Movie.
> By way of illustration: IPP's computer connected with a tracker, got the IP address of each of Defendants' computers, connected with each Defendants' computer, and downloaded at least one piece of the Movie from each Defendants' computer. During this transaction, IPP's computer verified that each Defendants'

4

piece of the Movie had the expected Hash; otherwise, the download would not have occurred.

Patrick Collins, Inc. v. John Does 1-21, CIV.A. 11-15232, 2012 WL 1190840, at *4-5 (E.D. Mich. Apr. 5, 2012). Significantly, Judge Randon then explained through the force of clear deductive logic that each Defendant obtained the piece of plaintiff's movie in one of four ways all of which relate directly back to one individual seed.

> If Plaintiffs allegations are true, each Defendant must have downloaded the piece(s) each had on his or her computer in one, or more, of the following four ways:
> 1) the Defendant connected to and transferred a piece of the Movie **from the initial seeder;** or
> 2) the Defendant connected to and transferred a piece of the Movie **from a seeder** who downloaded the completed file from the initial seeder or from other peers; or
> 3) the Defendant connected to and transferred a piece of the Movie **from other Defendants** who downloaded from the initial seeder or from other peers; or
> 4) the Defendant connected to and transferred a piece of the Movie **from other peers** who downloaded from other Defendants, other peers, other Seeders, or the Initial Seeder.
> In other words, in the universe of possible transactions, at some point, each Defendant downloaded a piece of the Movie, which had been transferred through a series of uploads and downloads from the Initial Seeder, through other users or directly, to each Defendant, and finally to IPP.

Id. Having limited the universe to four possibilities the court correctly concluded the transaction was logically related.

> Therefore, each Defendant is logically related to every other Defendant because they were all part of a series of transactions linked to a unique Initial Seeder and to each other. This relatedness arises not merely because of their common use of the BitTorrent protocol, but because each Defendant affirmatively chose to download the same Torrent file that was created by the same initial seeder, intending to: 1) utilize other users' computers to download pieces of the same Movie, and 2) allow his or her own computer to be used in the infringement by other peers and Defendants in the same swarm.

Id.

### i.   **The Supreme Court Encourages Joinder**

"Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966). Acknowledging this proposition, the Northern District of Illinois found joinder proper in a similar action stating "in many courts such requirements for joinder are 'liberally construed in the interest of convenience and judicial economy in a manner that will secure the just, speedy, and inexpensive outcome of the action.'" First Time Videos, LLC v. Does 1-500, 276 F.R.D. 241, 252 (N.D. Ill. 2011) (quoting *Lane v. Tschetter,* No. 05–1414, 2007 WL 2007493, at *7 (D.D.C. July 10, 2007)).

In United States v. Mississippi, 380 U.S. 128 (1965) the Supreme Court found that the joinder of six defendants, election registrars of six different counties, was proper because the allegations were all based on the same state-wide system designed to enforce the voter registration laws in a way that would deprive African Americans of the right to vote. Although the complaint did not allege that the registrars directly interacted with each other, or even that they knew of each other's actions, or that each other's actions directly affected each other in any way, the Supreme Court interpreted Rule 20 to hold a right to relief severally because the series of transactions were related and contained a common law and fact. Id. at 142-143.

> [T]he complaint charged that the registrars had acted and were continuing to act as part of a state-wide system designed to enforce the registration laws in a way that would inevitably deprive colored people of the right to vote solely because of their color. On such an allegation the joinder of all the registrars as defendants in a single suit is authorized by Rule 20(a) of the Federal Rules of Civil Procedure.

Id. at 142. Indeed, the Supreme Court held all of the defendants were joined properly because they were all acting on the basis of the same system which created a transactional relatedness.

6

Likewise, in the case at hand, it is not necessary for each of the Defendants to have directly interacted with each other Defendant, or have shared a piece of the file with each and every Defendant when downloading the movie. The Defendants are properly joined because their actions directly relate back to the same initial seed of the swarm, and their alleged infringement further advances the series of infringements that began with that initial seed and continued through other infringers. In doing so, the Defendants all acted under the same exact system. Just as it was not alleged in <u>United States v. Mississippi</u> that the registrars shared with each other their efforts to prevent African Americans from voting, it is not necessary for the Defendants to have shared the pieces of the movie with each other. It is sufficient that the Defendants shared pieces that originated from the same exact file, and opened their computer to allow others to connect and receive these pieces.

### B. <u>There Are Common Issues of Fact and Law</u>

Rule 20(a)(2)(B) requires the plaintiffs' claims against the putative defendants to contain a common question of law or fact. Recently, the Honorable Judge Tharp of the Northern District of Illinois, issued an opinion stating that joinder was proper because the plaintiff "allege[d] in its complaint that the defendants participated in the swarm simultaneously and that it observed the defendants transferring data from the Video between themselves." <u>Sunlust Pictures, LLC v. Does 1-75</u>, 12 C 1546, 2012 WL 3717768 at *4 (N.D. Ill. Aug. 27, 2012). Judge Tharp also found that the claims against the Doe Defendants clearly contained common questions of law and fact.

> As to the second requirement for joinder, this lawsuit appears to involve questions of law and fact common to all defendants, including whether Sunlust is a proper copyright holder, whether violations of the Copyright Act have occurred, and whether entering a BitTorrent swarm constitutes willful copyright infringement . . . Rule 20 requires only that "any question of law or fact [be] common to all defendants," not that *every* question of law or fact be common . . .

7

> Accordingly, joinder is proper here, and the Court denies Doe's motion to sever for improper joinder.

Id. Likewise, all of the Doe defendants in this case participated in the same swarm.

Similar cases in other districts have held the same. "The Plaintiff meets this requirement. In each case, the Plaintiff will have to establish against each putative defendant the same legal claims concerning the validity of the copyrights in the movies at issue and the infringement of the exclusive rights reserved to the plaintiffs as copyright holders." Nu Image, Inc. v. Does 1-3, 932, 2:11-CV-545-FTM-29, 2012 WL 1255189 (M.D. Fla. Apr. 12, 2012). The "factual issues related to how BitTorrent works and the methods used by plaintiffs to investigate, uncover and collect evidence about the infringing activity will be essentially identical for each putative defendant." Call of the Wild Movie v. Does 1-1,062, 770 F. Supp. 2d 332, 344-345 (D.D.C. 2011).

"Here, common questions of law and fact are present. Defendants are all accused of violating the same copyright laws. Additionally, the interconnectedness of using BitTorrent to complete the alleged acts creates common questions of fact. Consequently, we find that this low standard is satisfied." Malibu Media, LLC v. John Does 1-15, CIV.A. 12-2077, 2012 WL 3089383 (E.D. Pa. July 30, 2012). The fact that each Doe Defendant may later assert "individual defenses that 'differ wildly' . . . does not mean that joinder is improper" as Defendant suggests. Id.

C. **The Time Period For Infringement**

The nature of the BitTorrent protocol provides for continuous seeding and distributing of the movie long after it has downloaded. Without stopping the program by physically un-checking the automatic seeding, an alleged infringer likely will seed and distribute a movie for an extended period of time. As the Eastern District of Michigan explained the technology, even

after an infringer has completed a download of the movie, he or she may distribute the movie for weeks after having received the download.

> [I]t is not that an infringer would wait six weeks to receive the Movie, it is that the infringer receives the Movie in a few hours and then leaves his or her computer on with the Client Program uploading the Movie to other peers for six weeks. Because the Client Program's default setting (unless disabled) is to begin uploading a piece as soon as it is received and verified against the expected Hash, it is not difficult to believe that a Defendant who downloaded the Movie on day one, would have uploaded the Movie to another Defendant or peer six weeks later. This consideration, however, is irrelevant since concerted action is not required for joinder.

Patrick Collins, Inc. v. John Does 1-21, 2012 WL 1190840 (E.D. Mich. Apr. 5, 2012). Here, Plaintiff's investigator received a piece of the movie from the defendants when they were allegedly distributing it to others.

The Southern District of New York, recognizing that the concept of joinder is adaptable to changing technological landscapes impacting the complexity of lawsuits, stated, "[w]hile the period at issue may therefore appear protracted by ordinary standards, the doctrine of joinder must be able to adapt to the technologies of our time." Malibu Media, LLC v. John Does 1-5, 12 CIV. 2954 NRB, 2012 WL 3641291 (S.D.N.Y. Aug. 24, 2012). The Michigan Court explained that time constraints should not impact that the infringements occurred through a series of transactions. "[T]he law of joinder does not have as a precondition that there be temporal distance or temporal overlap; it is enough that the alleged BitTorrent infringers participated in the same series of uploads and downloads in the same swarm." Patrick Collins, Inc. v. John Does 1-21, 2012 WL 1190840 (E.D. Mich. Apr. 5, 2012.)

### D. Joinder Promotes Judicial Efficiency

Joinder of the defendants creates judicial efficiency, particularly at this stage of the litigation process and is beneficial to the Doe Defendants. "[J]oinder at this stage is . . . in the

9

interest of convenience and judicial economy [and] does not create any unnecessary delay nor does it prejudice any party. Rather, severance is more likely to likely to cause delays and prejudice [plaintiff] and future named defendants alike." First Time Videos, LLC v. Does 1-500, 276 F.R.D. 241, 252-53 (N.D. Ill. 2011)

The Eastern District of Pennsylvania has addressed this issue and stated, "consolidating early discovery for the purpose of determining the scope of claims and defenses will foster judicial economy. Should that process reveal disparate defenses as to each party, the Court would consider such a fact relevant on a later review of joinder's propriety." Raw Films, Ltd. v. John Does 1-15, CIV.A. 11-7248, 2012 WL 1019067 (E.D. Pa. Mar. 26, 2012).

### III. THIS COURT SHOULD NOT QUASH THE SUBPOENA

Rule 45(c)(3) provides that a court must modify or quash a subpoena that fails to allow a reasonable time to comply; requires a non-party to travel more than 100 miles (except for trial within the state); requires disclosure of privileged materials; or, subjects a person to undue burden. See Fed. R. Civ. P. 45(c)(3)(A)(i-iv). The Rule also provides for circumstances in which a court may modify or quash a subpoena. These circumstances are when the subpoena requires disclosure of trade secrets; disclosure of certain expert opinions; or, requires a nonparty to incur substantial expense to travel more than 100 miles to attend a trial. See Fed. R. Civ. P. 45(c)(3)(B)(i-iii).

"Even where a party has standing to quash a subpoena based on privilege or a personal right, he or she lacks standing to object on the basis of undue burden." Malibu Media, LLC v. John Does 1-21, 12-CV-00835-REB-MEH, 2012 WL 3590902 (D. Colo. Aug. 21, 2012). Here, Defendant does not seek to quash the subpoena on his claim of privilege, but on the basis of an undue burden and that the subpoena is overbroad. This is not a valid reason to quash the

subpoena when Defendant is a third party and not the recipient of the subpoena. Defendant's motion should be denied on this basis.

Courts across the country have extensively addressed this issue in copyright BitTorrent actions and have held that third party defendants do not have standing to move to quash the subpoena on the basis of undue burden. See W. Coast Productions, Inc. v. Does 1-5829, 275 F.R.D. 9, 16 (D.D.C. 2011) ("The general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought."); Call of the Wild Movie, LLC v. Smith, 274 F.R.D. 334, 338 (D.D.C. 2011) ("the putative defendants face no obligation to produce any information under the subpoenas issued to their respective ISPs and cannot claim any hardship, let alone undue hardship."); Malibu Media, LLC v. John Does 1–15, No. 12–2077, 2012 WL 3089383, at *8 (E.D.Pa. July 30, 2012) (noting that a defendant seeking to quash a subpoena on an internet service provider "is not faced with an undue burden because the subpoena is directed at the internet service provider and not the [d]efendant").

Even if Defendant does have standing to quash the subpoena on the basis of an undue burden or that the subpoena is overbroad, the information Plaintiff seeks is clearly relevant. In a near identical BitTorrent infringement case, the Eastern District of Pennsylvania concluded, "the information sought is thus highly relevant to the plaintiff's claims." Raw Films, Ltd. v. John Does 1-15, CIV.A. 11-7248, 2012 WL 1019067, at *6 (E.D. Pa. Mar. 26, 2012). The Raw Films court also noted that Fed. R. Civ. P. 26(b)(1) permits parties to obtain discovery of "the identity and location of persons who know of any discoverable matter." Id. at *14. When addressing the issue of whether the infringer is the account holder of the IP address, the Court stated "[t]hese are not grounds on which to quash a subpoena otherwise demonstrated to be

proper.  The moving Doe may raise these and any other nonfrivolous defenses in the course of litigating the case."  Id.  Here, Plaintiff is only seeking the basic identifying information of the Doe Defendants.  "The information sought by Plaintiff falls squarely within this broad scope of discovery and is therefore warranted in this matter." Malibu Media, LLC v. John Does 1-9, 8:12-cv-669-T-23AEP, *4 (M.D. Fla. July 6, 2012).  "[T]he Court finds that any concern about identifying a potentially innocent ISP customer, who happens to fall within the Plaintiff's discovery requests upon the ISPs, is minimal and not an issue that would warrant the Court to exercise its inherent power to govern these discovery matters by minimizing or prohibiting the otherwise legitimate, relevant, and probative discovery." Id. at *5.

Further, Defendant's due process argument is illogical.  Plaintiff cannot serve Defendant's with the complaint without first obtaining their identities, which is why Plaintiff issued the subpoena.  To say that Plaintiff needs to serve Defendant before it may issue the subpoena defeats the entire purpose of issuing the subpoena.  More importantly, Defendant's rights to due process have not been violated because if Plaintiff does serve him, he will be able to answer the complaint and assert his defenses at that time.

### A. Defendant's IP Address Is the Only Way to Identify the Infringer

An individual using Defendant's IP Address illegally downloaded Plaintiff's copyrighted work.  Even assuming it was not the Defendant, under the broad discovery provided by the Federal Rules, the subscriber's information is still highly relevant because the subscriber is the most obvious person to identify who has used his or her internet service.  "[E]ven assuming *arguendo* that the subscribers' name and information is not the actual user sought, we are of the opinion that it is reasonable to believe that it will aid in finding the true identity of the infringer and, therefore, we find that it is relevant. This is especially true, as in this case, where there is no

other way to identify the proper defendants and proceed with claims against them." <u>Malibu Media, LLC v. John Does 1-15</u>, CIV.A. 12-2077, 2012 WL 3089383 (E.D. Pa. July 30, 2012).

If the Court were to follow the rationale in <u>VPR Internationale v. Does 1-1017</u>, 2:11-cv-02068, (C. Ill. April 29, 2011), cited by Defendant, copyright holders would be unable to bring actions for copyright infringement on the Internet. This holding would be contrary to the express policy of Congress. Congress enacted the Digital Theft Deterrence Act of 1999 to deter online infringement by increasing the penalties therefore. See <u>Sony v. Tennenbaum,</u> 660 F.3d 487, 497 (1st Cir. 2011) (citing the Congressional record and holding that non-commercial individuals commit infringement by distributing copyrighted works online). The Supreme Court has held file sharing of copyrighted works is infringement. See <u>Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd</u>. 545 U.S. 913, 125 S.Ct. 2764 (2005). Two circuit courts opined that Rule 45 subpoenas may be used to identify online copyright infringers. See <u>In re Charter Communications, Inc. Subpoena Enforcement Matter</u>, 393 F.3d 771, 774 (8th Cir. 2005); <u>Arista Records, LLC. v. Doe 3</u>, 604 F.3d 110 (2d Cir. 2010). The Register of Copyrights testified before Congress that entertainment companies have the right to sue for peer to peer infringement and they should not apologize for doing so.[2] Courts unanimously hold that Plaintiff's First Amendment right under the Petition clause to bring a suit for infringement outweighs any First Amendment right proffered by an alleged infringer. See e.g., <u>Sony Music Entertainment, inc. v. Does 1-40</u>, 326 F.Supp.2d 556 (S.D.N.Y. 2004) (and the cases citing thereto).

The only way to enforce one's copyrights against online infringement is to subpoena the identity of the subscriber whose internet was used to commit the infringement. With out this ability, copyright owners would have a right without a remedy. Any such state of affairs would

---

[2] <u>Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks Statement of Marybeth Peters The Register of Copyrights before the Committee on the Judiciary</u> 108th Cong. (2003) <u>available at</u> http://www.copyright.gov/docs/regstat090903.html

violate Chief Justice Marshall's often cited rule that "the very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he received an injury." Marbury v. Madison, 1 Cranch 137, 1803 WL 893, *17 (U.S. 1803).

### B. Plaintiff's Technology is Reliable

It is indisputable that Plaintiff's technology identified the IP Address responsible for infringing Plaintiff's work. Plaintiff's investigator testifies to this in his declaration in support of Plaintiff's Motion for Leave, as well as clearly explaining the process for identifying the IP addresses and including supporting exhibits detailing how the technology works. Doc. 4. Plaintiff's investigator, IPP Limited, established a direct one to one connection with Defendant's internet and received a piece of the copyrighted movie.

Further, Plaintiff uses the same process when identifying infringers as Federal Law Enforcement uses to identify cyber crimes. In a Statement of Deputy Assistant Attorney General Jason Weinstein before the Senate Judiciary on Privacy, Technology and the Law, he discusses how Federal law enforcement use IP addresses to identify an individual.

> When a criminal uses a computer to commit crimes, law enforcement may be able, through lawful legal process, to identify the computer or subscriber account based on its IP address. This information is essential to identifying offenders, locating fugitives, thwarting cyber intrusions, protecting children from sexual exploitation and neutralizing terrorist threats.[3]

The Eastern District of Pennsylvania directly addressed whether an IP address was sufficient to identify the infringer.

> The Court acknowledges that Verizon's compliance with the subpoena may not directly reveal the identity of an infringer. Indeed, the subscriber information Verizon discloses will only reveal the account holder's information, and it may be

---

[3] Statement of Deputy Assistant Attorney General Jason Weinstein Before the Senate Judiciary Subcommittee on Privacy, Technology and the Law available at www.justice.gov.

that a third party used that subscriber's IP address to commit the infringement alleged in this case.

Raw Films, Ltd. v. John Does 1-15, CIV.A. 11-7248, 2012 WL 1019067 (E.D. Pa. Mar. 26, 2012).  (Internal citations omitted).  The Court continued that while the IP address did not guarantee the subscriber was the infringer, "[t]he subpoena is specific enough to give rise to a reasonable likelihood that information facilitating service upon proper defendants will be disclosed if the ISPs comply."  Id.

### IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the subject motion.

Dated: September 14, 2012

Respectfully submitted,
NICOLETTI & ASSOCIATES, PLLC

By:   /s/ *Paul J. Nicoletti*
Paul J. Nicoletti, Esq. (P44419)
36880 Woodward Ave, Suite 100
Bloomfield Hills, MI 48304
Tel:  (248) 203-7800
Fax:  (248) 203-7801
E-Fax: (248) 928-7051
Email:  paul@nicoletti-associates.com
*Attorneys for Plaintiff*

### CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:   /s/ *Paul J. Nicoletti*