## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 1:12-cv-01188-JES-JAG |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN DOES 1-34, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DOE 21'S
### MOTION TO RECONSIDER ORDER OF AUGUST 1, 2012 AND TO
### QUASH OR MODIFY SUBPOENA [DKT. 15]

**I.     INTRODUCTION**

Plaintiff respectfully requests the Court deny Defendant's Motion because Defendant has not provided a valid reason for the Court to vacate its prior correct order, Defendant has not demonstrated a proper basis to quash the subpoena, and joinder is proper.  "While we would like to think that everyone obeys the law simply because it is the law and out of a sense of obligation, we also know that laws without penalties may be widely ignored."[1]  Plaintiff has suffered great harm due to infringements committed by thousands of residents in this District and has no option but to file these suits to prevent the further widespread theft of its copyright.

The Honorable Magistrate Judge Cudmore of this District recently denied a similar motion to vacate. See Patrick Collins, Inc. v. John Does 1-9, No. 12-CV-3161 (C.D. Ill. Sept. 18, 2012) (Ex. A).  In the opinion, Judge Cudmore expressly distinguished VPR Internationale v. Does 1-1017, 11-2068, 2011 WL 8179128 (C.D. Ill. Apr. 29, 2011) on which Defendant heavily

---

[1] Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks Statement of Marybeth Peters The Register of Copyrights before the Committee on the Judiciary 108th Cong. (2003) available at http://www.copyright.gov/docs/regstat090903.html

relies, and refused to vacate a prior order granting plaintiff leave to serve subpoenas on defendants ISPs prior to a Rule 26(f) conference. Additionally, the Northern District of Illinois has issued six opinions addressing the same issues in BitTorrent copyright infringement actions holding that similar motions should be denied because joinder is proper at this stage of the litigation proceedings. See First Time Videos, LLC v. Does 1-76, 276 F.R.D. 254, 257 (N.D. Ill. 2011) ("At this stage, joinder is appropriate."); First Time Videos, LLC v. Does 1-500, 276 F.R.D. 241, 252 (N.D. Ill. 2011) ("An examination of each of these requirements shows that joinder is proper at this time."); MGCIP v. Does 1-316, 10 C 6677, 2011 WL 2292958 (N.D. Ill. June 9, 2011) ("The Court also finds that the putative defendants's arguments that they were improperly joined are premature."); Hard Drive Productions, Inc. v. Does 1-55, 11 C 2798, 2011 WL 4889094 (N.D. Ill. Oct. 12, 2011) ("At this pleading stage, Hard Drive's allegation that Does 1–55 have infringed Hard Drive's copyright through BitTorrent—the nature of which necessitates a concerted action by many people in order to disseminate files—is sufficient to satisfy Rule 20(a)."); Pac. Century Int'l v. Does 1-31, 11 C 9064, 2012 WL 2129003 (N.D. Ill. June 12, 2012) ("at least at this stage, Plaintiff's allegations that the anonymous defendants participated in the same "swarm" (at varying times spanning just over one month) sufficiently alleges that they were involved in "a series of transactions" to warrant joinder under Rule 20."); Sunlust Pictures, LLC v. Does 1-75, 12 C 1546, 2012 WL 3717768 (N.D. Ill. Aug. 27, 2012) ("joinder is appropriate in this case because Sunlust has alleged sufficient facts to provide a basis for joinder of all of the defendants.".)

Both the Eighth and Second Circuits, the only circuits to rule on the issue, have approved the use of Rule 45 subpoenas in on-line infringement cases to identify anonymous Doe Defendants. The Eight Circuit held "organizations such as the RIAA can file a John Doe suit,

along with a motion for third-party discovery of the identity of the otherwise anonymous 'John Doe' defendant." In re Charter Communications, Inc., Subpoena Enforcement Matter, 393 F.3d 771, FN3 (8th Cir. 2005). Similarly, in Arista Records, LLC. v. Doe 3, 604 F.3d 110 (2d Cir. 2010) the Second Circuit upheld the District Court's denial of a motion to quash after Arista obtained leave "to serve a subpoena on defendants' common ISP, the State University of New York at Albany." By so holding, the Second Circuit approved the process of issuing a Rule 45 subpoena to an ISP to identify anonymous Doe Defendants. Additionally, the Second Circuit rejected Doe 3's assertion that the Supreme Court's heighted pleading standards as announced in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S.Ct. 1337 (2009) made it impossible to plead a claim of infringement against an on-line anonymous infringer.

> [T]he Court finds that (a) the information sought in the subpoenas is relevant to the plaintiff's claims; and (b) under the circumstances, the plaintiff's right to pursue its claims of infringement by means of discovering subscriber information outweighs the moving defendant's asserted rights to remain anonymous in connection with the alleged infringing activity.

Id. at 5.

At this stage of the litigation process, Plaintiff has no other option but to file suit against the owners of these IP addresses to obtain the infringers identity. If this Court were to follow Defendant's rationale, Plaintiff would have no recourse against the mass copyright infringement it suffers on a daily basis.

## II.    THIS COURT SHOULD NOT QUASH THE SUBPOENA

This Court has previously determined that Plaintiff established good cause to issue a Rule 45 subpoena on Defendant's ISP and granted Plaintiff limited discovery because Plaintiff has no other way to identify the Defendants and proceed with its copyright infringement case against

them.  Your Honor Previously stated, "[b]ecause of the very nature of internet infringement, it is often the case that a plaintiff cannot identify an infringer in any way other than by IP number. Given the substantial federal policy underlying copyright law, it would be a travesty to let technology overtake the legal protection of that policy."  Order DE #6.   Plaintiff has requested only the identifying information of the Defendants from their ISPs.

> The Court found good cause for ordering that discovery, *see* Fed.R.Civ.P. 26(b)(1), because the plaintiff showed that a subpoena seeking the subscriber information associated with the allegedly infringing IP addresses would be the only way for the plaintiff to identify the proper defendants in this case and proceed with its claims against them.[3] *See* Declaration of Tobias Fieser ¶ 9, 23, Pl.'s Mot. Ex. The information sought is thus highly relevant to the plaintiff's claims.

Raw Films, Ltd. v. John Does 1-15, CIV.A. 11-7248, 2012 WL 1019067, at *6 (E.D. Pa. Mar. 26, 2012).   The Court also noted that Fed. R. Civ. P. 26(b)(1) permits parties to obtain discovery of  "the identity and location of persons who know of any discoverable matter."  Id. at *14. When addressing the issue of whether the infringer is the account holder of the IP address, the Court stated "[t]hese are not grounds on which to quash a subpoena otherwise demonstrated to be proper.  The moving Doe may raise these and any other nonfrivolous defenses in the course of litigating the case."  Id.

Defendant relies on VPR Internationale v. Does 1-1017, 2:11-cv-02068, (C. Ill. April 29, 2011) to support his theory that Plaintiff's subpoena should be quashed.  See Def's Mot. VPR Internationale involved 1,017 defendants grouped into one case, and lacked proper personal jurisdiction and venue.  This case does not suffer from the same procedural problems.  Judge Cudmore of this District noted that

> VPR Internationale did not allege that any of the 1,017 IP addresses had been used to upload or download the same unique copy of any of VPR Internationale's copyrighted works.  VPR international did not allege that it had

identified even one IP address that was used within the District to infringe on one of its copyrights.

Patrick Collins, Inc. v. John Does 1-9, No. 12-CV-3161 (C.D. Ill. Sept. 18, 2012) (Ex. A).

Further, an individual using Defendant's IP address illegally downloaded Plaintiff's copyrighted work. Even assuming it was not the Defendant, under the broad discovery provided by the Federal Rules, the subscriber's information is still highly relevant because the subscriber is the most obvious person to identify who has used his or her internet service. Judge Cudmore recently recognized that arguments asserting defenses or denials as to the alleged infringement are premature at this stage and that the subpoenaed information is relevant.

> Doe/4's arguments may or may not be persuasive at trial or summary judgment, but this is a discovery issue. Collins seeks to use the subpoenas to secure information from the ISPs. Collins may do so if the information sought is not privileged and is relevant to the claims . . . Relevance is a broad concept at the discovery phase . . . The identity of the customers associated with the Alleged IP Addresses is relevant under this standard. The customers may know who used the Alleged IP Address at issue or whether some spoofing occurred. The identity of the customer is also likely to lead to any neighbor or other person who may have illegally connected to the customer's wireless technology. The subpoenas to the ISP, therefore, are a proper use of discovery.

Patrick Collins, Inc. v. John Does 1-9, No. 12-CV-3161 (C.D. Ill. Sept. 18, 2012) (Ex. A).

Other district courts agree with this proposition. "[E]ven assuming *arguendo* that the subscribers' name and information is not the actual user sought, we are of the opinion that it is reasonable to believe that it will aid in finding the true identity of the infringer and, therefore, we find that it is relevant. This is especially true, as in this case, where there is no other way to identify the proper defendants and proceed with claims against them." Malibu Media, LLC v. John Does 1-15, CIV.A. 12-2077, 2012 WL 3089383 (E.D. Pa. July 30, 2012).

If the Court were to follow the rationale in VPR Internationale, copyright holders would be unable to bring actions for copyright infringement on the Internet. This holding would be

contrary to the express policy of Congress.  Congress enacted the Digital Theft Deterrence Act of 1999 to deter online infringement by increasing the penalties therefore.  <u>See</u> <u>Sony v. Tennenbaum,</u> 660 F.3d 487, 497 (1st Cir. 2011) (citing the Congressional record and holding that non-commercial individuals commit infringement by distributing copyrighted works online). The Supreme Court has held file sharing of copyrighted works is infringement.  <u>See</u> <u>Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd</u>. 545 U.S. 913, 125 S.Ct. 2764 (2005). Two circuit courts opined that Rule 45 subpoenas may be used to identify online copyright infringers.  <u>See</u> <u>In re Charter Communications, Inc. Subpoena Enforcement Matter</u>, 393 F.3d 771, 774 (8th Cir. 2005); <u>Arista Records, LLC. v. Doe 3</u>, 604 F.3d 110 (2d Cir. 2010).  The Register of Copyrights testified before Congress that entertainment companies have the right to sue for peer to peer infringement and they should not apologize for doing so.[2]  Courts unanimously hold that Plaintiff's First Amendment right under the Petition clause to bring a suit for infringement outweighs any First Amendment right proffered by an alleged infringer.  <u>See e.g.</u>, <u>Sony Music Entertainment, inc. v. Does 1-40</u>, 326 F.Supp.2d 556 (S.D.N.Y. 2004) (and the cases citing thereto).

Defendant also relies on the Eastern District of New York opinion where Judge Brown questioned the likelihood the infringer was the owner of the IP Address.  <u>See</u> Def's Mot. Plaintiff respectfully disagrees with Magistrate Judge Brown's opinion and believes that recent technological advances make it more likely that a wireless account will be secured and can easily be traced to a household where the subscriber either is the infringer or knows the infringer. Recently, PC Magazine published an article regarding the scarcity of open wireless signals. "These days, you are lucky to find one in 100 Wi-Fi connections that are not protected by

---

[2] <u>Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks Statement of Marybeth Peters The Register of Copyrights before the Committee on the Judiciary</u> 108th Cong. (2003) <u>available at</u> http://www.copyright.gov/docs/regstat090903.html

passwords of some sort."[3]  The author continues to explain why routers are now more likely to be secured.  "The reason for the change is simple: the router manufacturers decided to make users employ security with the set-up software.  As people upgrade to newer, faster routers, the wide-open WiFi golden era came to an end."[4]  This article, published on March 26, 2012, runs contrary to Judge Brown's assertions and supports the idea that most households have closed, protected wireless that is not likely to be used by a neighbor or interloper.

Further, Plaintiff uses the same process as Federal Law Enforcement to identify cyber crimes.  In a Statement of Deputy Assistant Attorney General Jason Weinstein before the Senate Judiciary on Privacy, Technology and the Law, he discusses how Federal law enforcement use IP addresses to identify an individual.

> When a criminal uses a computer to commit crimes, law enforcement may be able, through lawful legal process, to identify the computer or subscriber account based on its IP address. This information is essential to identifying offenders, locating fugitives, thwarting cyber intrusions, protecting children from sexual exploitation and neutralizing terrorist threats.[5]

While, as Defendant suggests, this process may not be 100% accurate, it is the most accurate and likely way to identify the person responsible for the use of that IP address.  Indeed, it is the only way.

The Eastern District of Pennsylvania directly addressed whether an IP address was sufficient to identify the infringer.

> The Court acknowledges that Verizon's compliance with the subpoena may not directly reveal the identity of an infringer. Indeed, the subscriber information Verizon discloses will only reveal the account holder's information, and it may be

---

[3] See Free Wi-Fi is Gone Forever www.pcmag.com/article2/0,2817,2402137,00.asp
[4] Id.
[5] Statement of Deputy Assistant Attorney General Jason Weinstein Before the Senate Judiciary Subcommittee on Privacy, Technology and the Law available at www.justice.gov.

that a third party used that subscriber's IP address to commit the infringement alleged in this case.

Raw Films, Ltd. v. John Does 1-15, CIV.A. 11-7248, 2012 WL 1019067 (E.D. Pa. Mar. 26, 2012). (Internal citations omitted). The Court went on to note that while the IP address did not guarantee the subscriber was the infringer, "[t]he subpoena is specific enough to give rise to a reasonable likelihood that information facilitating service upon proper defendants will be disclosed if the ISPs comply." Id. The Northern District of Indiana additionally noted "objections such as these are essentially irrelevant and premature because they go to the merits of Plaintiff's claims and do not address the propriety vel non of the subpoenas." Third Degree Films, Inc. v. Does 1-2010, 4:11 MC 2, 2011 WL 4759283 (N.D. Ind. Oct. 6, 2011) (internal citations omitted).

The only way to enforce one's copyrights against online infringement is to subpoena the identity of the subscriber whose internet was used to commit the infringement. "[Plaintiff] has a critical need for this information so it may proceed with its suit, remedy its losses, and prevent further infringement." Id. Without this ability, copyright owners would have a right without a remedy. Any such state of affairs would violate Chief Justice Marshall's often cited rule that "the very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he received an injury." Marbury v. Madison, 1 Cranch 137, 1803 WL 893, *17 (U.S. 1803).

## A. Plaintiff's Settlements Are Proper

Defendant mischaracterizes Plaintiff's purpose for engaging in settlement activities, suggesting that simply the fact that a Defendant named in litigation may be offered a settlement constitutes improper litigation tactics. Prior to actually proceeding against defendants, it is proper to contact them to discuss settlement options. The only difference between this case and

the countless others filed every day by other plaintiffs in a broad array of civil litigation is that

the Plaintiff does not have the ability to identify the defendants before the suit is filed.

> [T]he John Doe defendants' argument about coercive settlements is simply
> without any merit in those cases where the John Doe Defendant is represented by
> counsel. And, second, the John Doe Defendants' argument is misguided in that
> this type of case creates special circumstances that would require judicial review
> of any motivation to settle, and the Court is not inclined to create a special
> proceeding to inform any particular John Doe Defendant of a right which is
> obviously commonly known, i.e. his or her right to defend and litigate this
> lawsuit.

Malibu Media, LLC v. John Does 1-9, 8:12-cv-669-T-23AEP, (M.D. Fla. July 6, 2012) at *7.

The Supreme Court has stated that public policy favors resolutions through settlement.

"Rule 68's policy of encouraging settlements is neutral, favoring neither plaintiffs nor

defendants; it expresses a clear policy of favoring settlement of all lawsuits."  Marek v. Chesny

473 U.S. 1, 11 (1985).  Further, Plaintiff has a First Amendment right under the petition clause to

make the demand.  See Sosa v. DirectTV, 437 F. 3d 923, 937 (9th Cir. 2006) (holding "the

protections of the Petition Clause extend to settlement demands as a class," including those made

during and prior to a suit.)

Judge Cudmore's opinion noted that early resolution of legal disputes prior to trial is a

positive outcome, not a negative one, and that absent any showing of wrongdoing, the fact that a

copyright infringement BitTorrent case may settle prior to trial does not in and of itself indicate

abusive litigation or settlements tactics.  Indeed, "[o]ne person's cottage industry in harassing

lawsuits, is another person's vigilant defense of property rights."  Patrick Collins, Inc. v. John

Does 1-9, No. 12-CV-3161 (C.D. Ill. Sept. 18, 2012) (Ex. A).

> The fact that Collins, and others, may settle these suits quickly also does not
> indicate any wrongdoing. Settlement of civil disputes is generally a positive
> outcome, not a negative one . . . Doe/4 further makes no showing that Collins is
> fabricating a false claim. Doe/4 does not allege that Collins pulled the Alleged
> IP Addresses out of thin air without a good faith basis to believe those addresses

9

were used to download the Work.  Doe/4 does not challenge any of the procedures used by Collins' investigator to identify infringing IP addresses, including the Alleged IP Addresses.  Doe/4 does not dispute that the Alleged IP Addresses were used to download and upload portions of the same unique copy of the Work.  Doe/4, thus, does not dispute that Collins traced the Alleged IP Addresses to this District.  Doe/4 presents no basis for the claim that Collins is improperly attempting to extract settlements from innocent people.

Id.

The Eastern District of Michigan addressed this same issue, noting that a Defendant had provided no specific facts to support its claim that Plaintiff's purpose was to scare up settlements.  See Third Degree Films v. Does 1-36, 11-CV-15200 (E.D. Mich. May 29, 2012).

To the extent that it is independent, the Court notes that while Defendant claims that this suit was brought only to scare up settlements (Def.'s Mot. to Sever at 2, 11), Defendant has offered no case-specific facts supporting this claim. Rather, Defendant relies on the conduct of adult-film companies in other cases. This guilt-by-association argument does not justify quashing the subpoena that this Plaintiff, Third Degree Films, served on Defendant's ISP pursuant to an Order entered by Judge Murphy allowing this discovery.

Id.  (Emphasis added).  Just as in Third Degree, Defendant is attempting to influence this Court to make a decision based on accusations in other cases involving other counsel in other districts. These erroneous conclusions are propagated by anti-copyright blogs as a suggested defense strategy.  While Defendant goes to substantial effort to decry Plaintiff's purpose and settlement attempts, Defendant cannot provide any evidence of improperly holding a defendant to account.

**B.  The Requested Discovery is Not Overbroad**

When Plaintiff sends subpoenas to the ISPs, Plaintiff requests only the minimum information necessary to proceed with its copyright infringement claim.  Here, because Doe 21 is represented by counsel, it is ultimately inconsequential that Plaintiff will receive his telephone number because Plaintiff may only communicate with Defendant's counsel.  As the issue pertains to other Doe Defendants, Plaintiff believes it is proper to be able to efficiently

communicate with them regarding the lawsuit prior to service.  This request is not unreasonable. Indeed, it is standard for parties to discuss their claims before a defendant is served with a complaint and if a Defendant does not wish to be contacted by Plaintiff, Plaintiff will not contact them.  Withholding a Defendant's telephone number or email address only inhibits Plaintiff's efforts in proceeding with its claims and delays the eventual resolution of the issue with the Defendant.

### III.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the subject motion.

Dated: September 20, 2012

Respectfully submitted,
NICOLETTI & ASSOCIATES, PLLC

By:      /s/ Paul J. Nicoletti
Paul J. Nicoletti, Esq. (P44419)
36880 Woodward Ave, Suite 100
Bloomfield Hills, MI 48304
Tel:  (248) 203-7800
Fax:  (248) 203-7801
E-Fax: (248) 928-7051
Email:  paul@nicoletti-associates.com
Attorneys for Plaintiff


### CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:      /s/ Paul J. Nicoletti